UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY LYNN JOHNSON,

        Plaintiff,

vs.

SHREE BEARDSLEE, *et al.*,

        Defendants.
                                         /

Case No. 1:06-cv-374

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on defendants' motion for summary judgment (docket no. 31) and plaintiff's related motions for a preliminary injunction (docket no. 56) and for leave to file a supplemental complaint (docket no. 60)

        **I.**        **Introduction**

        Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

        Plaintiff claims that defendants violated his First Amendment rights, when they transferred him from Riverside Correctional Facility (RCF) to the Handlon Correctional Facility

(MTU), allegedly in retaliation for filing a lawsuit and for complaining about asbestos in his cell. Plaintiff further alleges that because of the transfer, he was deprived of some legal documents in other litigation, *Johnson v. Marble*, No. 4:05-cv-54 (W.D. Mich.), and had to voluntarily dismiss that lawsuit. The court granted plaintiff's motion for voluntary dismissal of the *Marble* litigation on February 28, 2006. Plaintiff filed the present retaliation action approximately three months later on May 31, 2006.

Defendants seek summary judgment on three grounds: (1) plaintiff failed to properly exhaust his administrative remedies prior to filing suit; (2) defendants are entitled to qualified immunity because plaintiff's transfer did not violate his clearly established constitutional rights; and (3) plaintiff's transfer to a different correctional facility did not violate any of plaintiff's constitutional rights.

Shortly after defendants filed their motion for summary judgment, plaintiff filed his motion for leave to file a "supplemental complaint," which seeks to add two additional defendants: Dr. George Pramstaller and Dr. Haresh Pandya. *See* docket no. 60-2. In the supplemental complaint, plaintiff alleges that Drs. Pramstaller and Pandya schemed with the original defendants to assist in depriving plaintiff of his constitutional rights as alleged. Defendants have not filed a response to this motion.

## II.     Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding

prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. A district court must enforce the exhaustion requirement sua sponte. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.) (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999). The exhaustion requirement, while not jurisdictional, is mandatory and must be addressed in the first instance by the district court in all prisoner civil rights cases before the merits of the case are addressed. *See Curry v. Scott*, 249 F.3d 493, 501 n.2 (6th Cir. 2001); *Wyatt*, 193 F.3d at 879; *Brown*, 139 F.3d at 1104. Dismissal of the suit is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Brown*, 139 F.3d at 1104.

In *Woodford v. Ngo*, -- U.S. --, 126 S. Ct. 2378 (2006), the Supreme Court stated that "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 126 S. Ct. at 2387 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court *Id.* at 2382-93; 42 U.S.C. § 1997e(a).

Here, defendants contend that plaintiff's suit should be dismissed because his grievance was untimely. Specifically, defendants point out that plaintiff was transferred on November 18, 2005, that plaintiff should have filed his grievance within five business days, but that he did not file the grievance until months later on February 15, 2006. Assuming that defendants' contentions are correct, the court nevertheless finds that plaintiff properly exhausted his grievance under the facts of this case. The record reflects that the Michigan Department of Corrections (MDOC) did not reject or deny plaintiff's grievance as untimely; rather, the MDOC processed it as

a timely filed grievance. *See* First Step Grievance receipts and Step I response, Grievance No. RCF 0602001770224Z (docket no. 74-2, pp. 21-23). The MDOC's position is understandable, given that its policy directives allow a grievance to be filed late when a prisoner is transferred to another facility. *See* MDOC, Policy Directive 03.02.130 G. 4. (while a grievance may be rejected if it "is filed an untimely manner," an untimely grievance "shall not be rejected if there is a valid reason for the delay, e.g., transfer"). Here, the MDOC chose to accept and address the merits of the grievance in February 2006. While defendants now argue that the grievance was untimely, the MDOC neither rejected nor denied the grievance as untimely, but addressed and denied the grievance on the merits. Defendants having not relied upon a defense of lack of exhaustion, no notions of comity are violated if this court does the same.

### III.     Defendants' motion for summary judgment

#### A.     Legal standard

Defendants have moved for summary judgment pursuant to Fed. Rules Civ. Proc. 56(b). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

In addition, defendants claim that they are entitled to qualified immunity. Qualified immunity from civil actions for damages is not a mere defense to liability, but rather absolute immunity from suit and an entitlement not to stand trial, which should be determined at the earliest possible stage in litigation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Consequently, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Sixth Circuit employs a two-step process to determine whether qualified immunity applies to the facts in a given case:

> First, the court considers whether, on the plaintiff's facts, there has been a constitutional violation. Second, the court considers whether that violation involved "clearly established constitutional rights which a reasonable person would have known."

*Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002), *quoting Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996).

**B.     Discussion**

The threshold issue in determining both defendants' qualified immunity claims and their claims for summary judgment is whether, on plaintiff's facts, there has been a constitutional violation. The court concludes that there has been none.

In *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999), the Sixth Circuit set forth the necessary elements to establish retaliation claims in the prison context:

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two--that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X*, 175 F.3d at 394.

Here, plaintiff met the first element of a retaliation claim, because he engaged in protected conduct by filing a lawsuit in *Johnson v. Marble*. However, plaintiff's transfer to another correctional facility did not amount to an adverse action. It is well-established that plaintiff had no constitutional right to remain at RCF. As the court explained in *Ward v. Dyke*, 58 F.3d 271(6th Cir. 1995):

> Prisoners do not have a constitutional right to be incarcerated in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Moreover, the Supreme Court has held repeatedly that the ability to transfer prisoners is essential to prison management, and that requiring hearings for such transfers would interfere impermissibly with prison administration. *Id.*; *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum*, 427 U.S. at 228, 96 S.Ct. at 2540.

*Ward*, 58 F.3d at 274.

"Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). See, e.g., *Smith v. Yarrow*, 78 Fed. Appx. 529, 543 (6th Cir.2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). However, where the foreseeable consequences of transfer substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Sigger-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney).

Here, plaintiff disagrees with the MDOC's stated reasons for the transfer from RCF, i.e., that the transfer was initiated for health care reasons, that "Health Care" determined plaintiff should be housed in a facility with an in-cell toilet, and that plaintiff's medical needs can be met more appropriately at a different facility. *See* Step I Grievance Response, No. RCF 010200177024Z (docket nos. 1-5, p. 31; 74-2, p. 23). Plaintiff's grievances, as well as his affidavits and the numerous documents submitted to the court in this lawsuit, express plaintiff's displeasure at the transfer from RCF, where he had resided for approximately 15 years. In these documents, plaintiff contends that the health-related reasons given for the transfer were false. However, even if plaintiff is correct, and he was transferred out of RCF for filing lawsuits and complaining about the asbestos in his cell, he had no constitutional right to remain at RCF. "[P]rison officials have discretion to

7

transfer him for whatever reason or for no reason at all." *Meachum*, 427 U.S. at 228. *See Ward*, 58 F.3d at 274 (transfer did not violate inmate's constitutional rights where inmate had filed 67 grievances and 48 appeals during a five-month period prior to his transfer; prison officials could properly transfer inmate where the sheer volume of his complaints "interfered with prison administration and caused tension among staff").

Furthermore, plaintiff presents no evidence that his transfer from RCF inhibited his ability to access the courts or file grievances. Plaintiff relies on the dismissal of the *Marble* litigation as the basis for his retaliation claim. Specifically, plaintiff contends that defendants lost his legal property, which prevented him from prosecuting that litigation. In his letters to the court dated November 30, 2005 and January 4, 2006, plaintiff claimed that some of his legal property was lost in the transfer. *See Marble*, No. 4:05-cv-54 (docket nos. 52, 57). On January 20, 2006, the Marble defendants filed an extensive response denying plaintiff's claims. *Id.* (docket no. 64). The response included affidavits and prisoner property receipts related to the transfer. *Id.* The undersigned issued a report and recommendation to deny plaintiff's request for injunctive relief in the *Marble* litigation on January 26, 2006. *Id.* (docket no. 66). Plaintiff filed objections to the report and recommendation on February 2, 2006. *Id.* (docket no. 73). A few days later, on February 8, 2006, plaintiff moved to voluntarily dismiss the *Marble* litigation without prejudice. *Id.* (docket no. 74). The court granted plaintiff's motion on February 28, 2006. *Id.* (docket no. 77). Plaintiff filed his Step I grievance in the present case on February 15, 2006, approximately two weeks <u>before</u> the termination of the *Marble* litigation.

The record reflects that plaintiff did not move to voluntarily dismiss the *Marble* litigation until after defendants filed an extensive opposition to plaintiff's claim regarding the loss

of his legal property and the undersigned recommended denial of his claim for immediate injunctive relief. Plaintiff's "motion for voluntary dismissal without prejudice" in the *Marble* case does not specifically reference his alleged loss of legal property necessary to prosecute that case. Rather, it appears that plaintiff sought to avoid costs related to filing a frivolous suit, sought concessions from defendants, and expressed an intent to re-file the suit at a future date. Plaintiff's motion for voluntary dismissal provided in pertinent part as follows (in his words):

> Plaintiff will Voluntarily Dismiss her Complaint in the instant action, if the Defendants as will the Plaintiff, absorb all costs related to the bringing of this complaint to date. Plaintiff has not filed any frivilous Complaint or Malicious Complaint and should be allowed to withdraw her complaint, and she would still be obligated to pay or finish paying the original filing fee to the Court.
>
> Plaintiffs withdrawl is contingent upon agreement of the Defendants to forego any other cost to Plaintiff for her withdrawl and will seek no other fees related to the bringing of this Complaint.
>
> A court should accept this Voluntary Dismissal Motion from the Plaintiff for she has not begun this action for any Frivilous or Malicious reasons other than an attempt to redress her wrongs. However, she reserves the right to re-file should the violations continue without relief, following her exhaustion of prison grievance processes properly.
>
> Plaintiff is unable to continue her pursuit of ths litigations for numerous reasons beyond her control. But has decided to give the Defendants another chance to correct their violations one last time, even though the Plaintiff has encured a tremendous cost in filing fees alone as well as copy, postages in the past months.
>
> Plaintiffs voluntary dismissal is contingent upon defendants agreeing to forego any pursuit of any other fees.

*Johnson v. Marble*, No. 4:05-cv-54 (plaintiff's motion for voluntary dismissal) (docket no. 74).

Plaintiff's decision to voluntarily dismiss the *Marble* litigation prevented the court from addressing the issue of his alleged lost property. Because plaintiff chose to voluntarily dismiss the *Marble* litigation, without prejudice, he cannot demonstrate that he was either injured by the

9

dismissal or denied access to the courts. *See Martinez v. Lueva*, 174 Fed.Appx. 235, 236 (5th Cir. 2006) (rejecting inmate's claim that prison officials denied him access to the courts, when inmate voluntarily dismissed his civil suit without prejudice; court reasoned that "[b]ecause the dismissal was without prejudice, [the inmate] has failed to show how he was actually injured by the dismissal or why he could not have refiled the suit"), *citing Lewis v. Casey*, 518 U.S. 343, 351(1996) (inmate must demonstrate "actual injury' to support a claim that prison officials violated his constitutional right of access to the courts). *See, e.g., Jenkins v. South Carolina Dept. of Corrections*, No. 0:05-0888-HFF-BM, 2006 WL 1663808 at *7 (D.S.C. May 16, 2006) (plaintiff failed to present any evidence of harm resulting from alleged denial of access to the courts, where plaintiff himself moved for a voluntary dismissal of the lawsuit at issue). In short, plaintiff cannot voluntarily dismiss a lawsuit without prejudice, and then use that dismissal as the basis for a subsequent First Amendment retaliation claim.

Plaintiff has failed to demonstrate a constitutional violation. Accordingly, defendants' motion for summary judgment should be granted.

**V.    Plaintiff's motion to file a supplemental complaint**

Plaintiff's motion to file a supplemental complaint (docket no. 60) seeks to amend the existing complaint by adding two additional defendants, Drs. Pramstaller and Pandya. Fed. R. Civ. P. 15(a) provides that a party may amend a pleading upon leave of court and "that leave shall be freely given when justice so requires." Justice, however, does not require the court to grant leave to file a futile amendment. *See Alexander v. Margolis*, 921 F. Supp. 482, 485 (W.D. Mich. 1995), *aff'd* 98 F. 3d 1341 (6th Cir. 1996) ( "[i]f the amendment will be futile . . . justice does not require

the court to grant leave"). *See generally, Hahn v. Star Bank*, 190 F. 3d 708, 715-718 (6th Cir. 1999); *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 995-96 (6th Cir. 1994).

As discussed in § IV, *supra*, plaintiff's original complaint fails to state a constitutional violation. Plaintiff's motion to amend by adding two doctors as defendants does not correct this shortcoming. Accordingly, his motion to file a supplemental complaint should be denied as futile.

### VI.     Plaintiff's motion for preliminary injunction

Plaintiff also seeks a preliminary injunction "in conjunction with" his supplemental complaint naming the two new defendants (docket no. 56). In the accompanying brief (docket no. 57), plaintiff asks for two forms of relief: first, transfer to a Level II correctional facility; and second (in his words) "upon arrival at said destination a Doctor shall interview and submit on the records to the Chief Medical officer for Lansing Michigan a true and exact copy of the Plaintiffs true wishes 'NOT TO RECIEVE ANY **MEDICAL TREATMENT**, NOT CONSISTENT WITH PLAINTIFFS RIGHT TO REFUSE "TREATMENT" HE SO WISHES NOT TO RECIEVE UNLESS IN WRITING AND SIGNED IS ASKED FOR."

As an initial matter, the court records reflect that plaintiff is incarcerated at the G. Robert Cottonwood Facility, which is a Level II facility. Accordingly, plaintiff's first request is now moot. *See Ailor v. City of Maynardville, Tennessee*, 368 F.3d 587, 596 (6th Cir. 2004) *quoting Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir.2001) ("[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed").

Finally, the court concludes that that plaintiff's second request for injunctive relief is without merit. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002). In reviewing requests for injunctive relief, the court considers (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the preliminary injunction will cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See Rock & Roll Hall of Fame v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998); *McPherson v. Mich. High School Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir. 1997)(en banc).

The four factors listed above are meant to be balanced as they guide the court in exercising its discretion; they are not due rigid application and need not be assigned equal weight. *In re Eagle-Pitcher Indus., Inc.,* 963 F.2d 855, 859 (6th Cir. 1992). While a court need not consider any single factor as either indispensable or dispositive, neither is it required to conclude that all four support its decision. The court's discretion is directed at the weight to be given each factor, and the effect to be accorded their mix. Furthermore, the plaintiff bears the burden of persuading the court that the factors weigh in favor of granting a preliminary injunction. *Granny Goose Foods, Inc. v Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 432, 441 (1974).

Where a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.

*See Kendrick v. Bland*, 740 F.2d 432, 438, n. 3 (6th Cir. l984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. l979). Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995), citing *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). *See also Whitley v. Albers*, 475 U.S. 312 (1986). Correctional officials are professional experts in matters of security and discipline; as such they are better suited to make decisions about security and discipline than are the courts. *Bell*, 441 U.S. at 547. Moreover, "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Id.* at 548.

As previously discussed, plaintiff's complaint should be dismissed for failing to state a claim, and his motion to file a supplemental complaint, which seeks to add two new defendants, should be denied as futile. It is unnecessary that the court proceed beyond the first factor, i.e., plaintiff's likelihood or probability of success on the merits. Because plaintiff's complaint is subject to dismissal, there is no likelihood that he will succeed on the merits. Accordingly, his motion for preliminary injunction should be denied on that ground.

### VII. Conclusion

I respectfully recommend that defendants' motion for summary judgment (docket no. 31) be **GRANTED** and plaintiff's motions for preliminary injunction (docket no. 56) and for leave t

to file a supplemental complaint (docket no. 60) be **DENIED**.

Entered: June 29, 2007 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).